UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER D. GRIFFIN,

                        Petitioner,                  Case No. 2:17-cv-11010
                                                              Hon. Nancy G. Edmunds
v.

CATHERINE BAUMAN,
                        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Christopher D. Griffin was convicted after a jury trial in the Wayne Circuit Court of carjacking, MICH. COMP. LAWS § 750.529a, unlawfully driving away an automobile, MICH. COMP. LAWS § 750.413, and receiving or concealing a stolen vehicle. MICH. COMP. LAWS § 750.535(7). Petitioner was sentenced to a term of 10-to-15 years' imprisonment for the carjacking conviction and lesser concurrent terms for the two other convictions.

The petition raises four claims: (1) insufficient evidence was presented at trial to prove Petitioner's identity as one of the perpetrators, (2) Petitioner's 10-to-15 year sentence was cruel and unusual in violation of the Eighth Amendment, (3) the jury's verdict was against the great weight of the evidence, and (4) insufficient evidence was presented at trial to sustain Petitioner's carjacking conviction.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny a certificate of appealability, and it will deny permission to appeal in forma pauperis.

## I. Background

The charges against Petitioner arose after an incident occurring on the night of August 11, 2013, when a group of four men assaulted Brach Goodman in front of his Detroit home. The assailants stole Goodman's automobile and other personal items including a cell phone. Because the cell phone had the tracking "Find iPhone" application, police officers were able to quickly locate the stolen vehicle. Petitioner and one other man were inside the vehicle when it was located. The cell phone was found in a different stolen vehicle parked nearby.

At trial, Brach Goodman testified that he was a sketch artist and was a student at the prestigious College of Creative Studies (CCS) in Detroit, where he studied portraiture. As part of his studies, Goodman had been studying faces at CCS for four years. He testified that at about 11:00 pm on the evening of the incident he parked his car outside his well-lit home. As he gathered some bags from the passenger side of his vehicle, a white van pulled up and a number of men got out and told him to give them his keys, wallet, phone, and other property.

Goodman identified Petitioner as one of the two men who pointed guns at him. He complied with the perpetrators' demands and ran to the back of his house. Goodman called the police, and two officers responded within five minutes. He gave the officers information about his "Find iPhone" application, and one of the police cars took off to track-down his phone. Goodman gave the officers a description of the perpetrators.

The day after the incident, Goodman attended a live lineup at the police station in which he identified Petitioner as the man that stood on his right side while holding a gun by its barrel, as if he were ready to hit him with it. Goodman said he was confident in his

identification of Petitioner as the man who entered his vehicle and drove it away.

Police officer Richard Reardon of the Detroit Police Department testified that he was one of the officers who responded to the scene. He testified that he met Goodman there and learned that he had a phone application that would allow him to track his stolen phone. Reardon logged the information into his own phone and the application located the stolen phone immediately. Reardon notified dispatch of the stolen phone's location, and other officers were sent to that location. The phone was found in a different stolen vehicle about three or four miles from the crime scene.

Reardon testified that two other officers located and stopped Goodman's vehicle about forty-five minutes after the incident near the location Petitioner's phone was found. The two men found in the vehicle, including Petitioner, were arrested. The other man had Goodman's multi-tool on his possession. The police did not find the white van, nor did Petitioner possess a gun when he was arrested.

Police officer Ursula Miller and Vincent Rogers of the DPD testified that using the phone tracking information supplied by Reardon, they located Goodman's vehicle driving with its headlights turned off. The vehicle was pulled-over. A juvenile by, Martez Brown, was the driver, and Petitioner was in the passenger seat. Goodman's stolen phone was recovered from a different stolen vehicle found about three blocks away. Goodman's vehicle was coming from the location of the other stolen vehicle.

Police officer Steven Turner of the DPD's Auto Theft-Carjacking Unit testified that the day after the incident he conducted the lineup in which Goodman identified Petitioner. He also interviewed Petitioner. Petitioner agreed to speak with Turner and signed a *Miranda* waiver form. Petitioner admitted to being in possession of a stolen car when he

3

was arrested, but he did not answer any further questions.

The jury found Petitioner guilty of the offenses indicated above. Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised two claims:

I. There was insufficient evidence to establish the defendant as the carjacker.

II. Defendant's sentence was cruel and unusual punishment.

Petitioner also filed a supplemental pro se brief, that raised two additional claims:

III. The verdict was against the great weight of the evidence.

IV. There was insufficient evidence of carjacking.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Griffin*, No. 320407, 2015 WL 2213719, at *1 (Mich. Ct. App. May 12, 2015). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he presented to the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Griffin*, 872 N.W.2d 461 (Mich. 2015) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

4

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Sufficiency of the Evidence

Petitioner's first and fourth claims assert that insufficient evidence was presented

5

at trial to sustain his conviction.[1] Petitioner argues that the prosecutor did not prove beyond a reasonable doubt his identity as one of the perpetrators of the offense. After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected Petitioner's claim on the merit as follows:

> Identity is an element of every offense. *People v. Yost*, 278 Mich. App. 341, 356 (2008). The prosecution must prove the identity of the defendant as the perpetrator of the charged offense beyond a reasonable doubt. *People v. Kearn*, 6 Mich. App. 406, 409 (1967). The victim gave a description of defendant to the police, picked defendant out of a police lineup, and identified defendant at trial as one of the members of the group of assailants. According to the victim, defendant was the person who stood closest to him during the carjacking, and defendant made motions indicating that he would hit the victim with a gun. The victim also testified that defendant was the person he saw fumbling with the victim's keys and the person who eventually drove away in the victim's car. The victim's identification testimony, viewed most favorably to the prosecution, was sufficient to identify defendant as the person who carjacked the victim and drove off in the victim's vehicle. In addition, defendant was discovered in the victim's vehicle less than two hours after the carjacking. The jury was entitled to credit the victim's identification testimony, and it could have rationally found that defendant was present in the stolen vehicle because of his involvement in the carjacking and thus was aware that it was a stolen vehicle and was involved in its continued possession. This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of the witnesses. *Eisen*, 296 Mich. App. at 331. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant was one of the carjackers, that defendant drove away in the victim's vehicle, and that defendant was knowingly in possession of the stolen vehicle when it was stopped by the police.

*Griffin*, 2015 WL 2213719, at *2-3.

"[T]he Due Process Clause protects the accused against conviction except upon

---

[1] Petitioner's related third claim, asserting the "great weight of the evidence" was contrary to the verdict, is a non-cognizable state-law claim. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); see also *Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).

6

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on a sufficiency-of-the-evidence review is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id*. at 334. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 318-19.

The Court may not vacate a state-court decision rejecting a sufficiency-of-the-evidence claim merely because it disagrees with the decision. Instead, it may grant habeas relief only if the state-court decision was an objectively unreasonable application of *Jackson*. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). For the Court, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Viewed most favorably to the prosecution, the evidence presented at trial was sufficient to support the jury's determination that Petitioner was one of the perpetrators. As noted by the state appellate court, the victim identified Petitioner in a line-up a day after the crime, and Petitioner was found in Petitioner's stolen vehicle soon after the crime occurred. As luck would have it, the victim was a sketch artist who for four years studied facial features and portraiture. At root, Petitioner's sufficiency claim simply presents arguments as to why the jury might have questioned the accuracy of the victim's identification and therefore doubted his credibility. But an assessment of a witness's credibility is "beyond the

7

scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). It did not fall below the "threshold of bare rationality" for the Michigan Court of Appeals to reject this claim on the merit. *Coleman*, 566 U.S. at 656.

B. Length of Petitioner's Sentence

Petitioner's second claim asserts that his 10-to-15 year carjacking sentence was cruel and unusual in violation of the Eighth Amendment. He asserts without elaboration that such a lengthy sentence for a carjacking was unwarranted for a nineteen-year-old defendant. Petitioner points to the fact that his ten-year minimum term was about three years longer than the low-end of the sentencing guideline range.

The Eighth Amendment, however, does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; see also *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not

sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Moreover, Petitioner's 10-to-15 year sentence is not a grossly disproportionate punishment for his crime of threatening the victim with a gun and stealing his car and personal items. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

As all of Petitioner's claim are without merit, the petition will be denied.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issued. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner is not entitled to habeas relief with respect to any of his claims, and so a certificate will be denied.

The Court will also deny permission to appeal in forma pauperis because any appeal

of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: August 28, 2018

s/ Nancy G. Edmunds
Honorable Nancy G. Edmunds
United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 28, 2018, by electronic and/or ordinary mail.

s/ Lisa Bartlett
Case Manager